Dear Marshal Falterman:
You have requested an opinion of the Attorney General regarding the funding for the Jeanerette City Court (Court). The factual scenario surrounding your request can be briefly stated as follows.
The Court has historically been reimbursing the City of Jeanerette (City) for the salaries of the employees within the Court system. The Court has now determined that this reimbursement is no longer feasible. Consequently, in August of this year, representatives of the Court met with representatives of the City and the Iberia Parish Police Jury (Parish), at which time a request was made of both the City and the Parish to fund the salaries and operational expenses of the Court. The request was subsequently presented to, and unanimously approved by, both the City Council (Council) and the Parish. However, on October 14, 1997, the Mayor of the City vetoed the action of the Council. Thus, while the Parish agreed to provide its share of the funding, the Mayor vetoed the Council's action authorizing same.
Given the above facts, you first ask us to identify those statutory provisions pertaining to the funding of the Court. You further ask whether the City and/or Parish are responsible for the salaries and expenses of the Court. Finally, you ask what alternatives are available to the Court to obtain funding from the City.
In answer to your questions, we refer you to R.S. 13:1874 which provides, in pertinent part, the following:
" § 1874. Compensation of judges in general
 A. Except as otherwise provided in R.S. 13:1875, the city court judges shall receive an annual salary payable monthly in equal proportions by the respective municipalities and parishes where the courts are located, as follows: . . ." [Emphasis added.]
R.S. 13:1881 provides with respect to the compensation of deputy marshals as follows:
 § 1881. General powers and duties of marshals; deputy marshals
* * *
 B. The marshal may appoint one or more deputy marshals having the same powers and authority as the Marshal, but the Marshal shall be responsible for their actions. The compensation of the deputy marshals shall be fixed and paid by the governing authorities of the city or parish, or both, where the court is located." [Emphasis added.]
R.S. 13:1883 provides, in pertinent part, the following:
 § 1883. Compensation of marshal
* * *
 C. Except as provided in R.S. 13:2071, in all other cases, in all other cases the marshal's salary shall be paid by the governing body of the city and parish where the court is located, . . . . [Emphasis added.]
Further, we direct your attention to R.S. 13:1888, which provides, in pertinent part, the following:
 § 1888. Salary of clerk and deputy clerk
 A. The salary of the clerks and of the deputy clerks, if any, may be fixed and paid in equal proportions by the respective governing authorities of the city and parish where the court is located: or it may be fixed and paid by either of them, or in such proportions as they may determine; . . . . [Emphasis added.]
Finally, we bring to your attention R.S. 13:1889 which provides, in pertinent part, the following:
" § 1889. Court room and offices
 A. The city where the court is situated shall furnish a suitable city court room and suitable offices for the judge, clerk, and marshal. It shall also furnish adequate fireproof vaults or other filing equipment for the preservation of the records of the court.
 B. The expenses of operation and maintenance of the court room and offices shall be borne by the city, or may be apportioned between the city and parish as the respective governing authorities may determine." [Emphasis added.]
Accordingly, and in answer to your first question, the above referenced and quoted provisions constitute the laws relating to the funding of the Court system.
As can be seen from the above, and in answer to your second question, Louisiana law unequivocally places the burden of funding the salaries of the city court judges, marshals, deputy marshals, clerks and deputy clerks squarely on the shoulders of the City and the Parish. Further, the law clearly places the responsibility of providing suitable courtrooms and offices for the judge, clerk and marshal on the City. Finally, the City is primarily responsible for the expenses of operation and maintenance of these courtrooms and offices.
In fact, it is our understanding that both the City and the Parish have incorporated the provisions of R.S. 13:1888 and 1889 into their local ordinances. This brings us to your third and final question, to-wit: What alternatives are available to the Court to secure funding from the City.
Obviously, the first course of action would lie with the Council. R.S. 33:406 (C)(3) vests the Council with the authority to override the Mayor's veto. It provides:
 "(3) An ordinance vetoed by the Mayor shall be considered again by the board of aldermen at its next regular meeting after the veto. The board may vote on the ordinance at that meeting or at a continuance of that meeting . . . . If a board consists of more than three members, an affirmative vote of two-thirds of the board's members shall be required to override a mayor's veto. If a board overrides an ordinance vetoed by a mayor, the ordinance becomes law upon its enactment by the board."
It is our understanding that there are five members serving on the Council; therefore, an affirmative vote of four out of five members is required for the override.
Another alternative which has been recognized by our judiciary is the inherent power of the Court to require the provision of funds necessary to insure its own effective operation through writ of mandamus. In the case of W. T. McCain v. Grant Parish PoliceJury, et al., 440 So.2d 1369 (La.App. 3rd Cir. 1983), the Court opined, with regard to the issue of mandamus as a remedy, the following:
 "Clearly, the courts of this state are established by our constitution, as is the legislative branch, and have a right to exist. If the legislative branch (Police Jury), being the only branch of government with the ability to generate operating funds, refuses to provide the necessary money for the operation of the courts, the courts have only one avenue of relief available; (i.e. a suit to force the fulfillment of a ministerial duty, mandamus). We hold that mandamus is the proper procedural device in a case such as this."
In Lyons, Judge, City Court of Bossier City, Louisiana v. BossierParish Police Jury, 262 So.2d 838 (La.App. 2nd Cir. 1972), it was held that a city court judge could use the remedy of a writ of mandamus to compel a police jury to increase the salaries of a clerk and deputy clerk. In that case, the City Council had agreed to the raises, but the defendant police jury persistently refused.
We believe these cases are applicable to the issue at hand. Accordingly, it is our opinion that the Court may file a writ of mandamus to compel the City to perform its statutory responsibility (i.e., ministerial duty) to fund the salaries and operational expenses of the Court system.
However, we recommend that every effort should be made by and between the City, Parish and Court to amicably resolve their differences and avoid protracted litigation.
Trusting this adequately responds to your inquiry, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ROBERT E. HARROUN, III
Assistant Attorney General
RPI/Rob3/cla